UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| NICHOLAS D. WILLIAMS, SR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:19-cv-00530-JPH-MG |
| MULLINS, et al. | ) ) ) ) |
| Defendants. | ) |

**ORDER DENYING DEFENDANT OFFICER KEVIN KNAPP'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Nicholas D. Williams, Sr., an inmate currently incarcerated at Wabash Valley Correctional Facility, brought this action under 42 U.S.C. § 1983 alleging that correctional officers used excessive force against him when he was housed at the Marion County Jail. Defendant Kevin Knapp seeks summary judgment on Mr. Williams' Eighth Amendment claim against him. For the reasons explained below, the motion for summary judgment, dkt. [90], is **DENIED**.

**I. SUMMARY JUDGMENT STANDARD**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must inform the Court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

1

The Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). It cannot weigh evidence or make credibility determinations because those tasks are left to the fact-finder. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit has assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the nonmoving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II. FACTS

The following facts are construed in the light most favorable to Mr. Williams as the non-movant. Unless noted below, these facts are undisputed for purposes of the motion for summary judgment.

On the evening of February 27, 2019, when Marion County Jail correctional officers turned off the television and inmates were supposed to return to their respective cells, Mr. Williams did not immediately return to his cell. Dkt. 90-1 at 61 (Williams Deposition). Lieutenant Mullins saw Mr. Williams "dash into [his] cell" about twenty minutes after the television was turned off. *Id*. at 61-62. Lt. Mullins approached Mr. Williams at the doorway of his cell, and the two "went back and forth." *Id*. at 94. Mr. Williams gave "verbal resistance" to Lt. Mullins. *Id*. at 103. Mr. Williams was told to face the wall and remain quiet while deputies conducted a cell search. *Id*. at 93–94. Lt. Mullins told Mr. Williams multiple times to be quiet and to face the wall, but Mr. Williams

repeatedly turned around to face Lt. Mullins. *Id*. at 66, 96. Lt. Mullins used physical force to position Mr. Williams's body to face the wall. *Id*. at 66. Mr. Williams asked for a supervisor. *Id*. at 67. Subsequently, Lt. Mullins handcuffed Mr. Williams and transported him to a new holding cell with defendant Corporal Shull. *Id*. at 67—68.

Mr. Williams testified at his deposition that either Lt. Mullins or Cpl. Shull then used unreasonable force on him seven times: (1) Lt. Mullins or Cpl. Shull punched him in the back of the neck; (2) Lt. Mullins hit him on the side of the face as he dropped to the ground; (3) Cpl. Shull kicked him in the back of his head; (4) Cpl. Shull kicked him again in his ribs; (5) Lt. Mullins stated that he was going to break Mr. Williams's arm; (6) Lt. Mullins placed his knee in Mr. Williams's back when securing his wrist in handcuffs; and (7) Cpl. Shull kicked the back of his head, causing the front of his head to "hit the cement." *Id*. at 106-11.

Mr. Williams attests that during the attack, Officer Knapp had a "perfect view" of the "unlawful assaults" by Lt. Mullin and Cpl. Shull but "did nothing but open the door and close the door as [Lt. Mullins] requested him to do." Dkt. 75 at 9. Mr. Williams testified in his deposition that he later asked Officer Knapp why he didn't stop the incident, and Officer Knapp told him that he did not want to get involved. Dkt. 90-1 at 77; dkt. 95 at 4.

### III. ANALYSIS

Mr. Williams argues that Officer Knapp failed to intervene when Lt. Mullin and Cpl. Shull used force against him. Officer Knapp argues that he is entitled to summary judgment because he was not involved in the use of force.

#### A. Scope of Excessive Force Claim

Officer Knapp argues that he is entitled to summary judgment because there is no evidence that he touched, much less used any force on, Mr. Williams. Because Mr. Williams alleged only

3

an "excessive force" claim and no "failure to intervene" claim, Officer Knapp contends, any failure to intervene claim was waived. *See* dkt. 91 at 7; dkt. 96 at 1–2. While the Court's screening order permitted an "Eighth Amendment excessive force claim" rather than a "failure to intervene claim" to proceed against Officer Knapp, dkt. 96 at 1, that is a distinction without a difference. *See Sanchez v. City of Chicago*, 700 F.3d 919, 926 (7th Cir. 2020) ("[I]n a section 1983 action alleging that police violated the plaintiff's Fourth Amendment rights by subjecting him to excessive force, a defendant police officer may be held to account both for his own use of excessive force on the plaintiff as well as his failure to take reasonable steps to attempt to stop the use of excessive force used by his fellow officers.") (citations omitted).

Because failure to intervene is an alternate theory of Eighth Amendment excessive force liability, Mr. Williams is not "rais[ing] a new claim for the first time in response to summary judgment." Dkt. 96 at 1. Indeed, the allegations in Mr. Williams's amended complaint provided Officer Knapp with ample notice of the facts underlying Mr. Williams's claims. *See* dkt. 75 at ¶ 75 (describing Officer Knapp's "perfect view" of the incident and alleging that Officer Knapp violated his Eighth Amendment rights by "refusing to step in ... to stop the unlawful assault against [him]."); *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) ("If [the plaintiff] can show at trial that an officer attacked him while another officer ignored a realistic opportunity to intervene, he can recover. Since he alleges facts to support these claims, they should not have been dismissed."). Therefore, the amended complaint sufficiently states a claim against Officer Knapp for failure to intervene, and the Court considers the merits of Officer Knapp's motion for summary judgment.

Correctional officers violate the Eighth Amendment when they use force "not in a good faith effort to maintain and restore discipline, but maliciously and sadistically for the very purpose of causing harm." *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018). Also, "[a]n officer who

fails to intervene to try to prevent known or cruel or unusual force, despite a reasonable opportunity to do so, may be held liable under § 1983." *Id*. at 1007. More specifically, under *Yang v. Hardin,* 37 F.3d 282 (7th Cir.1994), "[a]n officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Id.* at 285 (emphasis in original). "A 'realistic opportunity' means a chance to warn the officer using excessive force to stop." *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014) (cleaned up). "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury *could not possibly conclude otherwise*." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (cleaned up) (emphasis in original).

Here, Mr. Williams attests in his verified amended complaint that Officer Knapp was able to view "the unlawful assaults" by Lt. Mullin and Cpl. Shull but "did nothing but open the door and close the door as [Lt. Mullins] requested him to do." Dkt. 75 at 9. Viewing the facts in the light most favorable to Mr. Williams as the Court must on summary judgment, a jury could conclude that Officer Knapp had a realistic opportunity to intervene and stop the other officers' actions but did not. Therefore, Officer Knapp is not entitled to summary judgment as to the claim of failure to intervene.

### B. Qualified Immunity

Officer Knapp next argues that he is entitled to summary judgment under the doctrine of qualified immunity. Dkt. 91 at 7-11. "Qualified immunity is a doctrine that protects government

officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019) (internal quotation marks and citations omitted). This "clearly established" standard ensures "that officials can 'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Anderson v. Creighton*, 483 U.S. 635, 646 (1987)). Qualified immunity thus "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "To defeat a defense of qualified immunity, the plaintiff must show two elements: first, that the facts show 'a violation of a constitutional right,' and second, that the 'constitutional right was clearly established at the time of the alleged violation.'" *Leiser,* 933 F.3d at 701 (quoting *Gill v. City of Milwaukee*, 850 F.3d 335, 340 (7th Cir. 2017)). "Though legally distinct, the fate of plaintiff's failure to intervene claim is closely linked to that of [his] excessive force claim since, by definition, if there was no excessive force then there can be no failure to intervene." *Abdullahi v. City of Madison*, 423 F.3d 763, 767-68 (7th Cir. 2005).

Officer Knapp argues that he is entitled to qualified immunity because there was no clearly established law that he "could not open and close cell doors" during the incident. Dkt. 91 at 10. But that's not the alleged wrongful conduct. The alleged wrongful conduct is that Officers Mullins and Shull used excessive force on Mr. Williams while Officer Knapp watched and did nothing to try to stop them. Dkt. 75 at 9.

The "first step" in assessing the constitutionality of an officer's action in a qualified immunity case is to determine the relevant facts. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Viewing the facts in the light most favorable to Mr. Williams, there is a genuine issue of material fact as to whether Lt. Mullins and Cpl. Shull used excessive force on Mr. Williams. *Compare* dkt. 90-1, at 106-11 with dkt. 90-2 at 1. Considering this dispute, a reasonable jury could find that Officer Knapp observed the use of excessive force, had a realistic opportunity to intervene, but did nothing to try to stop it. Dkt. 90-1 at 88-89. A reasonable jury could also find based on these facts that Officer Knapp had a duty to intervene to prevent or stop the use of excessive force, even if he could have only "called for a backup, called for help, or at least cautioned [the excessive-force defendants] to stop." *Yang*, 37 F.3d at 285 (collecting cases). And the failure of an officer to intervene in such circumstances would constitute an Eighth Amendment violation. *Id.*; *Abdullahi*, 423 F.3d at 775.

The next question is whether the "constitutional right was clearly established at the time of the alleged violation." *Leiser,* 933 F.3d at 701 (citation omitted). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). This inquiry asks "whether the violative nature of *particular* conduct is clearly established." *Ashcroft v. al-Kidd*, 563 U.S. 731 742 (2011). The Court "must determine whether a right is clearly established 'in light of the specific context of the case, not as a broad general proposition.'" *Leiser*, 933 F.3d at 702. "Omissions as well as actions may violate civil rights." *Yang*, 37 F.3d at 285. Here, if a jury concludes that the use of force by Lt. Mullins and Cpl. Shull was malicious and sadistic, Officer Knapp is not entitled to qualified immunity. But if a jury concludes that the use of force was a good-faith effort to restore order, Officer Knapp is entitled to qualified immunity. *See Fillmore v. Page*, 358 F.3d 496, 505-06 (7th Cir. 2004).

Whether the actions of Officers Mullins and Shull "would have made it clear to a reasonable officer that intervention was warranted" turns on issues of material fact that must be resolved by a jury. *See Abdullahi*, 423 F.3d at 775. This factual dispute precludes the Court from entering judgment as a matter of law in favor of Officer Knapp on the basis of qualified immunity. *See Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) (affirming denial of qualified immunity on summary judgment because the facts concerning the reasonableness of the police officer's action needed to be "developed in the district court before a definitive ruling on the defense could be made"); *see also Gupta v. Melloh*, 19 F.4th 990, 1000 (7th Cir. 2021) ("[W]here there are disputes of material fact ... that are essential to the question of the reasonable use of force ... it is impossible to conclude on summary judgment whether [the defendant is] entitled to qualified immunity.").

## IV. CONCLUSION

For the reasons discussed above, Officer Knapp's motion for summary judgment, dkt. [90], is **DENIED**. Mr. Williams' claims against Officers Knapp, Lt. Mullins, and Cpl. Shull will be resolved via settlement or trial. It is the Court's preference that counsel represent Mr. Williams for purposes of settlement and trial. Therefore, the Court *sua sponte* reconsiders the denial of the plaintiff's motion for assistance with recruiting counsel. That motion, dkt. [80], is **GRANTED** to the extent that the Court will now attempt to recruit pro bono counsel to represent Mr. Williams.

**SO ORDERED.**

Date: 2/8/2022

                                                James Patrick Hanlon
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

NICHOLAS D. WILLIAMS, SR.
 cell unit P-217
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only